UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JESSICA LOVE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MONROE TOWNSHIP, et al.,<br><br>Defendants. | Civil Action No. 25-16861 (RK) (JTQ)<br><br>__OPINION__ |

__KIRSCH, District Judge__

**THIS MATTER** comes before the Court upon two Motions to Dismiss Plaintiffs Jessica and LeMont Love's (collectively, "Plaintiffs") First Amended Complaint ("FAC,"[1] ECF No. 23) filed by Defendant[2] Monroe Township, Defendants Chief Griffin Banos, Lieutenant Ronald Brewer, Lieutenant Leung, Lieutenant Sylvestri, Sergeant Spence, Sergeant Burns, Sergeant Cohn, Sergeant Caruso, Officer Holtz, Officer Pankeri, Officer Meagher, Officer Pronin, Officer Lloyd, Officer Buchanan, Sergeant Taylor, Officer Ramnaidu, Sergeant Mosakowski, Officer Bell, Sergeant Paglio, Officer Rieker, Officer Ostner (collectively, the "Police Defendants" and together with Monroe Township, the "Monroe Defendants," ECF No. 34), the Honorable Michael J. Blee,

---

[1] Although Plaintiffs' FAC is styled as their *second* amended complaint, the complaint is in fact their *first* amended complaint. The operative complaint is Plaintiffs' first amendment following filing their original complaint in state court. (*See* ECF No. 1; FAC.) For the sake of clarity, the Court will refer to this pleading as the First Amended Complaint.

[2] Plaintiffs also name AP Connor McCarthy, Middlesex County Prosecutor Linda Estremera, and Monmouth County Prosecutor Raymond S. Santiago as Defendants. These additional Defendants have not been served as of the date of this Opinion, nor have they entered an appearance. The Court thus lacks personal jurisdiction to render judgment for or against them and dismisses all claims against them. *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir. 1996). "Since, Plaintiff[s have] not served the above listed Defendants, all claims against them are dismissed." *Haynes v. FJC Sec.*, No. 08-2298, 2009 WL 1748969, at *6 (D.N.J. June 18, 2009).

Matthew J. Platkin (collectively, the "State Defendants," ECF No. 36). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the State Defendants' Motion is **GRANTED**, the Monroe Defendants' Motion is **GRANTED IN PART**, and **DENIED IN PART**, and the case is remanded.

## I.    BACKGROUND

Over the last two decades, Plaintiffs LeMont Love and Jessica Love[3]—both independently and combined—have filed or joined sixteen (16) federal actions in this District and a panoply of other actions filed in state court.[4] The majority of these cases, several of which are currently pending, name municipalities, local law enforcement, and county prosecutors as defendants in extensive civil rights actions, precisely as Plaintiffs do in the instant action. In addition, a cursory

---

[3] As discussed throughout, Plaintiffs' FAC rarely distinguishes between Plaintiffs in their allegations, often referring to a singular "Plaintiff" without specifying if the FAC is referring to LeMont or Jessica. In liberally construing Plaintiffs' FAC, the Court—to the extent it is able to discern from the substance of the allegations—refers to the individual Plaintiffs by their first names, as they both share the same surname.

[4] *Love v. Monroe Township*, (No. 09-01665) (previous action against Monroe Township and several police officers for harms stemming from LeMont's arrest); *Love v. Township of Marlboro*, (No. 25-16197) (action alleging discrimination, false arrest, and related civil rights violations following LeMont and Jessica's August 2024 arrest); *Love v. Dep't of Corr., et al.*, (No. 13-01050); *Love v. N.J. Dep't of Corr., et al.*, (No. 14-05629); *Love v. N.J. Dep't of Corr., et al.*, (No. 15-03681); *Love v. N.J. Dep't of Corr., et al.*, (No. 15-04404); *Love v. N.J. Dep't of Corr., et al.*, (No. 16-02017) (lawsuits involving alleged constitutional violations during LeMont's periods of incarceration); *Love v. Township of Edison*, (No. 22-03275) (action against Edison Township, multiple police officers, and prosecutors for harms arising out of LeMont's arrest); *Love v. Verizon Wireless*, (No. 25-13819) (action against Verizon concerning its alleged failure to produce phone records and other data in connection with a separate lawsuit); *Love v. S. River Police Dep't*, (No. 11-3765) (action against South River Police Department and various police officers); *Love v. Middlesex Cnty. Prosecutors Off.*, (No. 11-04154) (action against Middlesex County Prosecutors); *Love v. Law Off. of Richard M. Roberts*, (No. 11-04500) (action involving attorney-client dispute with criminal defense counsel); *Love v. N.J. State Police, et al.*, (No. 14-01313) (action against numerous police officers, state agencies, and state officials based on alleged racial profiling, including claims for selective enforcement, racial profiling, illegal search and seizure, false arrest, false imprisonment, malicious prosecution, and selective prosecution); *Love v. City of New Brunswick*, (No. 16-02586) (action involving allegations of selective policing, limited access to the courts, and malicious prosecution); *Love v. Att'y Gen. of N.J.*, (No. 20-01520) (habeas action); *Love v. Borough of Milltown*, (No. 25-13816) (action involving allegations of racial discrimination and asserting claims including unconstitutional seizure, warrantless search, false arrest, malicious prosecution, and loss or destruction of evidence).

review of judicially noticeable public records reveals that Plaintiff LeMont has an extensive criminal history dating back at least two decades, which includes a designation as a "persistent offender" and multiple convictions for robbery, burglary, aggravated assault, and drugs, as well as repeated separate adjudications for resisting arrest and eluding.[5]

At the outset, the Court notes that Plaintiffs' sprawling and disorganized FAC renders it impossible to place every allegation in a linear and chronological timeline. Plaintiffs' 34-page, 232-paragraph FAC is akin to the "kitchen sink," filled with scattershot, jumbled allegations relating to a series of traffic stops and arrests that they attempt to somehow weave together as some sort of pattern of coordinated harassment. The FAC pleads two seemingly distinct categories of claims: (1) claims seeking redress for the alleged discrimination and mistreatment Plaintiffs have suffered at the hands of the Monroe Defendants, and (2) claims seeking sweeping reform to "a statewide [New Jersey] pretrial system that weaponizes arrests . . . to justify indefinite monitoring, detention, and punishment without due process." (FAC ¶ 1.)[6]

## A.    HARASSMENT BY MONROE TOWNSHIP DEFENDANTS

With respect to this first category of claims, which Plaintiffs style as "Track A," Plaintiffs LeMont Love, a Black man, and his wife Jessica Love, a Hispanic woman, allege "a coordinated campaign of harassment by Monroe Township police" that has resulted in their false and

---

[5] *See, e.g., State of New Jersey v. Love*, No. A-5409-10 (N.J. Super. Ct. App. Div. July 31, 2014) (noting that LeMont was sentenced as a persistent offender on a second-degree robbery charge); *see also State of New Jersey v. Love*, No. A-2224-22 (N.J. Super Ct. App. Div. June 30, 2025); *State of New Jersey v. Love*, No. A-2211-22 (N.J. Super Ct. App. Div. Sept. 23, 2024); *State of New Jersey v. Love*, No. A-2125-20 (N.J. Super Ct. App. Div. Mar. 27, 2023); *State of New Jersey v. Love*, No. A-5367-16 (N.J. Super. Ct. App. Div. Mar. 11, 2019); *State of New Jersey v. Love*, A-6579-03 (N.J. Super. Ct. App. Div. May 31, 2006) (detailing portions of LeMont's criminal history).

[6] Plaintiffs' FAC is replete with allegations of conduct unrelated to the named Defendants or the asserted claims. The Court, in its attempt to liberally construe *pro se* Plaintiffs' pleadings, focuses its review on the facts relevant to Plaintiffs' claims, as best as it can discern them. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)

"retaliatory" arrests as part of a conspiracy to deprive them of their constitutional rights. (FAC ¶¶ 2–3, 50–127.)

### 1.    The December 26, 2023 Arrest

Plaintiffs allege that Monroe Township police officers began targeting and harassing them following LeMont's arrest on December 26, 2023. (*Id.* ¶¶ 50–57.) On December 25, 2023, Plaintiffs allege that LeMont was involved in an altercation with an unnamed individual who "attacked" him. (*Id.* ¶ 50.) The following day Police Defendant Holtz responded to the scene and told LeMont that he "[was] going to jail period [sic]," and that Police Defendants Paglio, Bell, Rieker, and Ostner "participated in effectuating [his] arrest." (*Id.* ¶¶ 52, 54.) LeMont alleges that Police Defendants Mosakowski and Spence "approved [LeMont's] charges without investigating [his] account or his injuries," which Plaintiffs maintain was an exercise of self-defense. (*Id.* ¶¶ 50–53.)

Curiously, on the same day that LeMont was arrested, Plaintiffs also allege that he was stopped and pulled over by Defendant Holtz and two other officers where he was issued traffic citations. (*Id.* ¶ 27.) Like so much of Plaintiffs' FAC, the Court cannot determine whether Plaintiffs allege one, two, or three separate traffic stops. Specifically, Plaintiffs allege that on December 26, 2023, that (1) Police Defendant Rieker issued LeMont a citation for driving an unregistered U-Haul trailer (which Plaintiffs maintain was registered), (2) Police Defendant Ostner issued LeMont a red light violation (for a traffic light Plaintiffs allege was yellow), and (3) Police Defendant Holtz—whether as part of the same incident discussed above or at some other time that day—issued a citation for LeMont's "[u]nlawful taking of a motor vehicle" (which Plaintiffs characterize as a citation for "stealing" his "own car"), not specifying whether this was a different car than the U-Haul stopped by Officer Rieker. (*Id.* ¶¶ 27, 55–57.) At this stop, Plaintiff LeMont volunteered that his directive to law enforcement was the following: "You motherfuckers are going to stop

4

harassing me." (*Id.* ¶ 14.) Plaintiffs offer no explanation for this confusing, difficult-to-follow timeline, which, among other things, fail to provide the timing of the arrest for the assault and the three traffic citations. (*See id.* ¶¶ 51–53.)

Following the December 26, 2023 arrest, Plaintiffs allege that the State moved to detain LeMont pending trial. (*Id.* ¶ 58.) At a detention hearing on January 5, 2024, LeMont alleges that the Superior Court judge "found no probable cause to believe [LeMont] committed any of the charged offenses." (*Id.* ¶ 59.) However, LeMont further alleges that, after he filed a motion to dismiss, the State "removed" his case from New Jersey Superior Court to Monroe Township Municipal Court, and that the Municipal Court "continued prosecution on these same charges for 22+ months" despite the Superior Court's probable cause finding. (*Id.* ¶¶ 60–61.) Plaintiffs allege that LeMont was placed—presumably by the Municipal Court, although Plaintiffs do not say— "on Level 3 pretrial monitoring as a condition of release," which includes "weekly in-person/phone call alternating weekly reporting; interstate travel restrictions; [and] prohibition [sic] from Monroe Township Police Station." (*Id.* ¶¶ 62–63.) According to the FAC, John Doe Pretrial Services Defendants kept LeMont on Level 3 monitoring "without review, without step-down, [and] without any mechanism for Plaintiff to challenge the basis for continued restrictions." (*Id.* ¶ 67.) Plaintiffs fail to state, however, whether they sought any modification of the terms and conditions of pretrial release pursuant to N.J. Ct. R. 3:26-2(c). Plaintiffs allege that the interstate travel restrictions "destroyed" LeMont's commercial driving career and his promotional work for the web development company "Manglz." (*Id.* ¶¶ 62–68.) Plaintiffs appear to allege LeMont's criminal matter "remains pending," presumably in Municipal Court. (*Id.* ¶ 6.) While the Court is

5

uncertain of the precise disposition of this criminal proceeding (as well as others referenced throughout the FAC), the Court accepts Plaintiffs' allegations as true at this stage.

### 2.    The June 20, 2024 Traffic Stop

Plaintiffs allege that "[t]hroughout 2023 and 2024"—without providing greater temporal specifics or factual details—that Police Defendant Pankeri "engaged in a pattern of harassment against Plaintiff"—without specifying which Plaintiff—by issuing traffic citations that were later dismissed. (*Id.* ¶ 71.) The FAC next alleges that on June 20, 2024, (six months after Plaintiff LeMont's arrest and the cited separate traffic citations), Police Defendants Pankeri and Pronin pulled over LeMont[7] "without legitimate basis" and issued a traffic citation for an "obstruction of view." (*Id.* ¶ 72.) During this stop, Plaintiffs allege that Police Defendant Burns, who also responded to the scene, prevented LeMont from attempting to film the interaction, as he "physically stepped in front of Plaintiff's camera, placed his body between the camera and the police vehicles, and ordered Plaintiff to stop filming, stating Plaintiff could not film inside the police cars." (*Id.* ¶¶ 95–96.)

Plaintiffs allege that, that same evening, LeMont[8] went to the Monroe Township Police headquarters to file formal complaints against Defendant Pankeri for harassment. (*Id.* ¶ 73.) Plaintiffs allege that LeMont made his complaint in Defendant Pankeri's absence to Police Defendant Cohn, stating that he "[didn't] want to break [Defendant Pankeri's] neck," that he "[didn't] want to hurt him," and that he just wanted "to be left alone."[9] (*Id.* ¶¶ 16, 74.) While

---

[7] While the FAC does not specify which of the two Plaintiffs were pulled over, the Monroe Defendants confirm in their Motion to Dismiss that the individual pulled over on June 20, 2024 was LeMont. (*See* ECF No. 34-4 at 13.)

[8] Again, the FAC does not specify whether LeMont or Jessica visited the Monroe Township Police headquarters to file a complaint. In their Motion to Dismiss, the Monroe Defendants confirm that this Plaintiff was LeMont. (*See* ECF No. 34-4 at 11.)

[9] Plaintiffs allege that "[i]n early 2024 (approximately March-April), Plaintiff" (presumably LeMont) filed a previous harassment complaint against Officer Pankeri. (FAC ¶ 16.) LeMont's complaint apparently

LeMont was making this complaint, Plaintiffs allege that another, non-party individual at the police station, a white man named George Dragustine, "made direct threats to officers" by shouting obscenities and challenging officers to fights. (*Id.* ¶¶ 78–79.) Plaintiffs allege that after Dragustine's outburst, Police Defendant Pronin repeatedly said that "Love is so calm," which Plaintiffs maintains "directly contradicts any claim that [LeMont] had intent to terrorize anyone." (*Id.* ¶ 80.)

### 3.    The June 21, 2024 Arrest

Plaintiffs allege that following the filing of LeMont's complaint against Defendant Pankeri, Police Defendant Brewer directed Defendant Cohn—who had taken the statement—"to contact Officer Pankeri." (*Id.* ¶ 83.) On June 21, 2024, Plaintiffs allege that Defendant Pankeri—with approval from Police Defendants Leung, Caruso, and Spence—filed charges for terroristic threats against LeMont, and that Police Defendants Meagher, Pronin, Lloyd, Buchanan, Ramnaidu, and Taylor effectuated his arrest. (*Id.* ¶¶ 84–88.) Following LeMont's arrest, Plaintiffs allege that Police Defendant Sylvestri put LeMont's complaints against Defendant Pankeri "on hold" because he now had pending criminal charges brought by the subject of his complaint. (*Id.* ¶¶ 104–06.) The FAC provides no information on the status of those criminal proceedings.

### 4.    Subsequent Law Enforcement Encounters

In addition to the above interactions with various Police Defendants, Plaintiffs allege that on May 19, 2025, Police Defendant Cohn engaged in "witness intimidation" by pulling Plaintiffs over and giving Jessica a ticket without a lawful basis. (*Id.* ¶¶ 18; 108–09.) According to Plaintiffs, Defendant Cohn (the State's "key witness" in the prosecution of LeMont's terroristic threats case),

---

related to Officer Pankeri's citing him with six "commercial vehicle citations" on unspecified dates, five of which were dismissed on an apparent technicality for erroneously being "issued to [the] driver, not [the vehicle] owner." (*Id.* ¶ 27.) Plaintiffs themselves acknowledge that these dismissals were a result of this "defect," not for their lack of substance. (*Id.*)

targeted Jessica (a "material witness" for LeMont in the same case), to "discourage" her from testifying. (*Id.* ¶¶ 18, 45–46, 109–13.) Despite Jessica's compliance with all driving laws, Plaintiffs allege that Defendant Cohn gave her a citation for failure to wear a seatbelt. (*Id.* ¶ 111.) Plaintiffs subsequently filed citizen criminal complaints against Defendant Cohn for witness intimidation, which the Middlesex County Prosecutor's Office declined to pursue. (*Id.* ¶ 119–21.) There are no facts set forth in the 200-plus paragraphed FAC which, aside from a bare conclusory allegation, substantiate that the traffic stop and seatbelt citation were acts of witness intimidation to attempt to silence Plaintiff Jessica.

The FAC further alleges that one of the Plaintiffs (without specifying who) filed an internal affairs complaint against Sergeant Cohn the day after this traffic stop. (*Id.* ¶ 107.) Plaintiffs also allege an encounter on October 4, 2025 in which they were tailgated by an unidentified police officer at high speed. (*Id.* ¶ 114–18.) Despite receiving no citation or ticket, Plaintiffs allege that this was continued "surveillance and intimidation" by the Monroe Township Police Department. (*Id.*) Moreover, the FAC provides no further information as to the status of the criminal prosecution of Plaintiff LeMont for terroristic threats, and if there was a trial, what the outcome was, and whether Plaintiff Jessica testified. In addition, like so much else, the FAC fails to set forth what came of the seatbelt citation.

### B.    THE NEW JERSEY PRETRIAL SYSTEM

The second category of claims the FAC asserts, styled as "Track B" claims, are purported systemic failures within New Jersey's "pretrial infrastructure" that allegedly function to deprive criminal defendants of their constitutional rights. (*Id.* ¶¶ 138–58.) As administered by the Administrative Office of the Courts ("AOC") and its Acting Director, Defendant Judge Blee, Plaintiffs allege that these "systems"—namely, the statewide eCourts system, the Public Safety Assessment ("PSA") Algorithm, and pretrial services—fail to operate uniformly across New

Jersey's twenty-one counties, result in disproportionate outcomes for minority defendants, and deny defendants a mechanism to challenge delays or inaccurate information. (*Id.*) These sweeping systemic challenges—asserted against the State Defendants and various unserved county prosecutors, *see supra* note 2—are based on Plaintiffs' experiences with the complained-of criminal procedural mechanisms, only some of which relate to the specific allegations discussed above against the Monroe Defendants.

For example, Plaintiffs allege that New Jersey's PSA system is faulty because it "retains data" from prior arrests—"[d]espite acquittal, dismissal, and expungement"—and permits pretrial services to use an individual's arrest history against a criminal defendant, an issue purportedly highlighted by Jessica's pretrial restraints and monitoring based on a prior shoplifting arrest. (*Id.* ¶¶ 128–33, 136.) Plaintiffs further allege that the PSA "[t]reats [a]rrests as [c]onvictions" and contributes to racial disparities in pretrial outcomes by "assign[ing] minority defendants higher risk scores than similarly situated white defendants." (*Id.* ¶¶ 138–46.) Moreover, Plaintiffs allege that the New Jersey eCourts system's lack of a "speedy trial clock" undermines "[d]efendants, defense attorneys, prosecutors, and judges" to "monitor compliance," a problem that has undermined LeMont's ability to challenge his Level 3 monitoring.[10] (*Id.* ¶¶ 148, 152) As a result of what they deem to be "[d]ata opacity as a [d]ue [p]rocess [f]ailure," Plaintiffs seek declaratory and injunctive relief aimed at instituting mandatory oversight over certain metrics pertaining to criminal defendants and requiring the AOC to implement a system-wide overhaul of New Jersey's pretrial procedures. (*Id.* ¶¶ 157–60.)

---

[10] According to New Jersey's Criminal Justice Reform Act ("CJRA"), "[l]evel 3 recommends weekly telephonic or in-person monitoring and monitored conditions." *See Holland v. Rosen*, 895 F.3d 272, 281 (3d Cir. 2018).

## C.    PLAINTIFFS' TWO "TRACKS" OF CLAIMS

As discussed, the FAC splits Plaintiffs' claims into the two "tracks:" claims against the Monroe Township Defendants (Track A) and claims challenging the statewide pretrial system (Track B). (*See generally* FAC.)

Under Track A, the FAC raises eleven federal claims—ten under 42 U.S.C. § 1983 ("Section 1983") and one under 42 U.S.C. § 1985—and one state law New Jersey Civil Rights Act (NJCRA) claim:

- Count One alleges a violation of LeMont's Fourth Amendment rights for "false arrest" in connection with his December 26, 2023 arrest. (FAC ¶¶ 161–64.) This claim is pleaded against:
  - o  Sergeants Mosakowski and Spence; and
  - o  Officers Holtz, Bell, Rieker, and Ostner.

- Count Two alleges a violation of LeMont's Fourth Amendment rights for "false arrest" in connection with his June 21, 2024 arrest. (FAC ¶¶ 165–68.) This claim is pleaded against:
  - o  Lieutenants Brewer and Leung;
  - o  Sergeants Cohn, Caruso, Spence;
  - o  Officers Pankeri, Meagher, Pronin, Lloyd, Buchanan, Ramanaidu; and
  - o  Assistant Prosecutor McCarthy (dismissed, *see supra* note 2).

- Count Three alleges a violation of Plaintiffs' Fourth Amendment rights for unlawful seizure in connection with "traffic stops." (FAC ¶¶ 169–71.) This claim is pleaded against:
  - o  Sergeant Cohn; and
  - o  Officers Pankeri, Rieker, Ostner, and Holtz.

- Count Four alleges a violation of Plaintiffs' Fourth Amendment rights for "continued seizure." (FAC ¶¶ 172–73.) This claim is pleaded against the John Doe Pretrial Services Defendants.

- Count Five alleges a violation of LeMont's First Amendment rights under a theory of retaliation in connection with his internal affairs complaints against Officer Pankeri. (FAC ¶¶ 174–77). This claim is pleaded against:
  - o  Lieutenants Brewer and Leung;
  - o  Sergeants Cohn, Caruso, and Spence;
  - o  Officer Pankeri; and
  - o  Assistant Prosecutor McCarthy (dismissed, *see supra* note 2).

- Count Six alleges a violation of LeMont's First Amendment rights to record. (FAC ¶¶ 178–80). This claim is pleaded against Sergeant Burns.

- Count Seven alleges a violation of Plaintiffs' Fourteenth Amendment Equal Protection rights for "selective enforcement" on account of their race. (FAC ¶¶ 181–83.) This claim is pleaded against:
  - Lieutenants Brewer and Leung;
  - Sergeant Cohn;
  - Officers Pankeri and Pronin; and
  - Assistant Prosecutor McCarthy (dismissed, *see supra* note 2).

- Count Eight asserts a *Monell*[11] claim against Monroe Township and Police Chief Griffin Banos related to the other asserted claims. (FAC ¶¶ 184–86.)

- Count Nine alleges another violation of LeMont's First Amendment rights for retaliation with respect to his internal affairs complaints. (FAC ¶¶ 187–90.) This claim is pleaded against:
  - Chief Banos;
  - Lieutenant Sylvestri, and
  - Monroe Township.

- Count Ten alleges a civil conspiracy pursuant to Section 1983 to deprive LeMont of his First and Fourth Amendment rights. (FAC ¶¶ 191–94.) This claim is pleaded against:
  - Lieutenants Brewer and Leung;
  - Sergeants Cohn, Caruso, and Spence;
  - Officers Pankeri and Pronin; and
  - Assistant Prosecutor McCarthy (dismissed, *see supra* note 2).

- Count Eleven alleges a separate 42 U.S.C. § 1985(3) conspiracy to interfere with LeMont's civil rights. (FAC ¶¶ 195–98.) This claim is pleaded against:
  - Lieutenants Brewer and Leung;
  - Sergeants Cohn, Caruso, and Spence;
  - Officers Pankeri and Pronin; and
  - Assistant Prosecutor McCarthy (dismissed, *see supra* note 2).

- Count Twelve alleges a generalized NJCRA claim. (FAC ¶ 199.). This claim is pleaded against all Monroe Defendants.

Under Track B, the FAC raises five constitutional claims pursuant to 42 U.S.C. § 1983, all of which are asserted against Defendants in their official capacities. (FAC ¶¶ 200–14.)

- Count Thirteen alleges a violation of Plaintiffs' procedural due process rights with respect to harms stemming from New Jersey's PSA system. (FAC ¶¶ 200–02.) This claim is pleaded against:
  - Former Attorney General Matthew Platkin;
  - AOC Acting Administrative Director Judge Blee; and
  - County Prosecutors Estremera and Santiago (dismissed, *see supra* note 2).

11

- Count Fourteen alleges a violation of Plaintiffs' procedural due process rights with respect to New Jersey's e-Courts system. (FAC ¶¶ 203–05.) This claim is pleaded against Judge Blee.

- Count Fifteen alleges a violation of Plaintiffs' procedural due process rights with respect to pretrial monitoring. (FAC ¶¶ 206–08.) This claim is pleaded against Judge Blee.

- Count Sixteen alleges a violation of Plaintiffs' Sixth Amendment speedy trial rights. (FAC ¶¶ 209–11.) This claim is pleaded against:
  o Judge Blee; and
  o County Prosecutors Estremera and Santiago (dismissed, *see supra* note 2).

- Count Seventeen alleges a violation of Plaintiffs' substantive due process rights with respect to pretrial monitoring. (FAC ¶¶ 212–14.) This claim is pleaded against:
  o Judge Blee; and
  o County Prosecutors Estremera and Santiago (dismissed, *see supra* note 2).

Although difficult to discern from the voluminous yet simultaneously sparse specific, confusing allegations of Plaintiffs' FAC, as a tool, the Court provides the following chart to attempt to assist in organizing the myriad of allegations alleged against the multiple defendants named in this action.[12]

| Date | Alleged Incident | Legal Outcome | Relation to Specific Counts | Individual(s) Named |
|---|---|---|---|---|
| Unknown dates in 2023-2024. | LeMont is issued five commercial vehicle citations. (FAC ¶¶ 27, 71.) | Citations allegedly dismissed on unknown dates. (FAC ¶ 71.) | • Count Three (Fourth Amendment unlawful seizure) (FAC ¶¶ 169-71.)<br>• | • Officer Pankeri |
| December 26, 2023 | LeMont is arrested in connection with an altercation that occurred a day prior involving an unnamed third party. (FAC ¶¶ 50-54.) | On January 5, 2024, a New Jersey Superior Court judge found that there was "no probable cause to believe the defendant committed any of the charged offenses." (FAC ¶¶ 58-59.) | • Count One (Fourth Amendment false arrest) (FAC ¶¶ 161-64.) | • Sergeant Mosakowski<br>• Sergeant Spence<br>• Officer Holtz<br>• Officer Paglio<br>• Officer Bell<br>• Officer Rieker<br>• Officer Ostner |

---

[11] *Monell v. Dept. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978).

[12] The Court has expended significant time and effort piecing together the disjointed allegations in the FAC to create the below chart, but may well have inadvertently missed a salient incident or more.

|  |  | The FAC does not even specify if these charges were related to the December 26, 2023 arrest. |  |  |
|---|---|---|---|---|
| December 26, 2023 | LeMont is given a citation for unlawful taking of a motor vehicle for "stealing his own car." (FAC ¶ 55.) | Citation allegedly dismissed on an unknown date. (FAC ¶ 55.) | • Count Three (Fourth Amendment unlawful seizure) (FAC ¶¶ 169-71.) | • Officer Holtz |
| December 26, 2023 | LeMont is stopped and given citations for "an unregistered vehicle . . . no insurance, [and] failure to exhibit [a] driver's license." LeMont maintains he was "towing a U-Haul trailer that obstructed the plate." (FAC ¶ 56.) | Citation allegedly dismissed on an unknown date. (FAC ¶ 56.) | • Count Three (Fourth Amendment unlawful seizure) (FAC ¶¶ 169-71.) | • Officer Rieker |
| December 26, 2023 | LeMont is given a citation for a red-light violation. (FAC ¶ 57.) | Citation allegedly dismissed on an unknown date. (FAC ¶ 57.) | • Count Three (Fourth Amendment unlawful seizure) (FAC ¶¶ 169-71.) | • Officer Ostner |
| Unknown, approximate dates in March-April 2024 | LeMont files IA complaints against Officer Pankeri regarding traffic citations he issued to LeMont. (FAC ¶¶ 69, 101.) | Resolution unknown. | • Count Five (First Amendment retaliation) (FAC ¶¶ 174-77.) | • Officer Pankeri |
| January 5, 2024 | Detention hearing in New Jersey Superior Court concerning LeMont's December 26, 2023 arrest. (FAC ¶¶ 58, 62-64, 68.) | LeMont is placed on Level 3 pretrial monitoring as a condition of release. (FAC ¶ 62.) | • Count Four (Fourth Amendment Continued Seizure) (FAC ¶¶ 172-73.) | • Pretrial Services Defendants |

13

| June 20, 2024 | LeMont is stopped and issued a citation for obstruction of view. (FAC ¶ 72.)<br><br>After being stopped and pulled over for obstruction of view, LeMont exits his vehicle to record the stop from a public road. Sergeant Burns placed his body between the camera and police vehicles, and ordered LeMont to stop filming. (FAC ¶¶ 95-97.) | Citation allegedly dismissed on an unknown date. (FAC ¶ 27.) | • Count Three (Fourth Amendment unlawful seizure) (FAC ¶¶ 169-71.)<br>• Count Six (First Amendment Right to Record) (FAC ¶¶ 178-80.) | • Officer Pankeri<br>• Sergeant Burns |
|---|---|---|---|---|
| June 20, 2024 (evening) | LeMont goes to the Monroe Township Police headquarters to file an IA Complaint against Officer Pankeri for harassment. (FAC ¶¶ 73-77, 102.)<br><br>While at police headquarters, George Dragustine threatens officers. (FAC ¶¶ 78-79.) | George Dragustine is allegedly not charged for his statements. (FAC ¶ 81.) | • Count Five (First Amendment Retaliation) (FAC ¶¶ 174-77.)<br>• Count Seven (Selective Enforcement) (FAC ¶¶ 181-83.)<br>• Count Eleven (§ 1985(3) conspiracy) (FAC ¶¶ 195-98.) | • Lieutenant Brewer<br>• Lieutenant Leung<br>• Sergeant Cohn<br>• Sergeant Caruso<br>• Sergeant Spence<br>• Officer Pankeri<br>• Officer Pronin<br>• Assistant Prosecutor McCarthy |
| June 21, 2024 | Terroristic threat charges are filed against LeMont. (FAC ¶¶ 83-89, 103.) | LeMont is arrested. (FAC ¶ 88.) | • Count Two (Fourth Amendment false arrest) (FAC ¶¶ 165-68.)<br>• Count Five (First Amendment retaliation) (FAC ¶¶ 174-77.)<br>• Count Ten (§ 1983 conspiracy) (FAC ¶¶ 191-94.) | • Lieutenant Leung<br>• Lieutenant Brewer<br>• Sergeant Cohn<br>• Sergeant Caruso<br>• Sergeant Spence<br>• Sergeant Taylor<br>• Officer Pankeri<br>• Officer Meagher<br>• Officer Pronin<br>• Officer Lloyd<br>• Officer Buchanan<br>• Officer Ramnaidu<br>• Assistant Prosecutor McCarthy |

14

| | | | | |
|---|---|---|---|---|
| Unknown date | LeMont's IA complaint against Officer Pankeri is placed "on hold" because LeMont now had pending criminal charges against the subject of his complaint. (FAC ¶¶ 104-105.) | Resolution unknown. | • Count Nine (First Amendment Retaliation) (FAC ¶¶ 187-90.) | • Chief Banos<br>• Lieutenant Sylvestri<br>• Monroe Township |
| May 19, 2025 | Jessica is driving with LeMont as a passenger and is pulled over by Sergeant Cohn for failing to wear a seatbelt.<br><br>Plaintiffs allege the stop was "witness intimidation" because Sergeant Cohn was the State's "key witness" in LeMont's terroristic threats case. (FAC ¶¶ 108, 110-113.) | Resolution unknown. | • Count Three (Fourth Amendment unlawful seizure) (FAC ¶¶ 169-71.) | • Sergeant Cohn |
| May 20, 2025 | An unspecified Plaintiff files an IA complaint against Sergeant Cohn. (FAC ¶¶ 107.) | The State represented that no IA complaints against Sergeant Cohn exist. (FAC ¶ 107.) | • Count Five (First Amendment Retaliation) (FAC ¶¶ 174-75.) | • Sergeant Cohn |
| May 20, 2025 | Plaintiffs file citizens' criminal complaints against Sergeant Cohn alleging witness intimidation. (FAC ¶ 119.) | Middlesex County Prosecutor's Office allegedly declined to prosecute the citizens' complaints. (FAC ¶ 121.) | • Related to Plaintiffs' general requests for injunctive relief regarding "Prosecutorial Accountability." (See FAC at 30.) | • State Defendants |
| October 4, 2025 | A Monroe Township police officer (identified only as a female) followed and tailgated Plaintiffs' vehicle "in an intimidating manner, activated emergency | Plaintiffs do not allege that they were stopped, cited, or charged with any alleged violations resulted from the alleged tailgating. | • Related to Plaintiffs' general requests for injunctive relief against the Monroe Defendants. (FAC ¶ 224.) | • Monroe Township |

15

| | | | | |
|---|---|---|---|---|
| | lights . . . ran [Plaintiffs'] license plates . . . [and] performed an illegal U-turn" before departing without making contact. (FAC ¶ 114.) | Plaintiffs have failed to allege the approximate duration of this tailgating incident. | | |
| Unknown date | Jessica is arrested for shoplifting in Milltown. (FAC ¶ 128.) | Jessica was released on a summons. Charges allegedly dismissed. (FAC ¶ 132.) | • Related to Jessica's purported standing to seek injunctive relief from the State in connection with Counts Thirteen to Seventeen. (FAC ¶¶ 200-214; *see also id.* at 30.) | • State Defendants |
| Unknown date | Jessica is arrested for shoplifting in Marlboro. (FAC ¶ 129.) | Jessica was detained and released on Level 3 pretrial monitoring from October 24, 2024 through July 2025, when the matter was resolved "in [Jessica's] favor" and the arrest expunged. (FAC ¶ 129-131.) | • Related to Jessica's purported standing to seek injunctive relief from the State in connection with Counts Thirteen to Seventeen. (FAC ¶¶ 200-214; *see also id.* at 30.) | • State Defendants |

### D.    PROCEDURAL HISTORY

Plaintiffs originally filed a forty-count complaint against substantially the same Defendants on September 1, 2025 in New Jersey Superior Court. (*See* ECF No. 1-1 at 8–42). Thereafter, on October 23, 2025, Defendant Matthew J. Platkin timely removed this matter given Plaintiffs' various federal claims. (*Id.*) On February 24, 2026, after receiving leave to amend from the Honorable Justin T. Quinn, U.S.M.J. pursuant to Rule 15(a)(1)(B), Plaintiffs filed their FAC. (ECF

16

No. 22; FAC.) The Monroe[13] and State Defendants filed their Motions to Dismiss on April 13, 2026, and April 16, 2026, respectively. (*See* ECF Nos. 34, 36.) Plaintiffs opposed both Motions, (ECF Nos. 35, 37), and both sets of Defendants replied, (ECF No. 38 (State Defendants reply); ECF No. 39 (Monroe Defendants reply)).[14] Following a motion from Plaintiffs under Local Rule 7.1(d)(6), the Court permitted Plaintiffs to file a sur-reply. (ECF Nos. 40, 42.) The Motions are now ripe for decision.

## II.    LEGAL STANDARD

### A.    RULE 8 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Federal Rule of Civil Procedure 8 requires a complaint to contain: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." *Id.* 8(d)(1). The Rule's purpose is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Mere "conclusory allegations against [d]efendants as a group" that "fail[] to allege the personal involvement of any [d]efendant" are insufficient to survive a motion to dismiss. *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) (citing *Aruanno v. Main*, 467 F. App'x 134, 137–38 (3d Cir. 2012) (per curiam)). A plaintiff must allege "meaningful facts which establish each individual [d]efendant's liability for the misconduct alleged." *Id.* When multiple

---

[13] At the outset, the Court notes that Monroe Defendants' briefing in support of their Motion to Dismiss was regrettably lacking. Defendants' failure to provide the Court with substantive and helpful analysis, along with relevant authority, required the Court to expend significant time and resources that may have been avoided, at least in part, with more thorough briefing. (*See generally* ECF No. 34.)

[14] Plaintiffs also filed a motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915, seeking to utilize the U.S. Marshals Service to properly serve all Defendants. (ECF No. 44.) Because the State Defendants already paid the filing fee when this case was removed, the Court denies Plaintiffs' motion as moot "without reaching the sufficiency of Plaintiff[s'] IFP application." *Stangl v. Bio-Med. Applications of N.J.*, No. 25-11035, 2026 WL 699564, at *6 (D.N.J. Mar. 10, 2026) (citing *Ping Lin v. Holder*, 387 F. App'x 93, 97 (2d Cir. 2010)).

17

defendants are sued, a plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which [d]efendants engaged in what wrongful conduct." *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013).

The Third Circuit has advised that courts should apply procedural rules, like Rule 8, "flexibl[y]" to pro se plaintiffs. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). However, a plaintiff's pro se status does not permit him to ignore the requirements of the federal rules or the purposes they serve. "[A] litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because [he] proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted). Even a pro se plaintiff must "allege sufficient facts in [the] complaint[ ] to support a claim." *Mala*, 704 F.3d at 245 (citation omitted). Defendants haled into court by a pro se plaintiff still need "fair notice" of the claims they will be expected to answer. *Twombly*, 550 U.S. at 555.

## B.    RULE 12(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear the claim. Fed. R. Civ. P. 12(b)(1). In evaluating a Rule 12(b)(1) motion to dismiss, courts must first determine whether the motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to consider the allegations of the complaint as true." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (internal quotation marks omitted). A factual challenge, on the other hand, "attacks allegations underlying the

assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Id.* The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268. The party invoking the federal court's jurisdiction has "the burden of proof that jurisdiction does in fact exist." *Petruska*, 462 F.3d at 302 n.3 (quoting *Mortensen*, 549 F.2d at 891).

## C.    RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions and therefore, are inadequate to survive dismissal. *Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224–25 (3d Cir. 2011). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement

19

with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008)).

## III.    DISCUSSION

### A.    THE COURT LACKS JURISDICTION TO GRANT INJUNCTIVE RELIEF

Plaintiffs seek sweeping declaratory and injunctive relief in connection with their claims against the State Defendants and Monroe Township. Plaintiffs ask this Court to declare that the "PSA-based pretrial framework," the New Jersey eCourts system, and the pretrial monitoring system unconstitutional on due process, equal protection, Fourth Amendment, and Sixth Amendment speedy trial grounds. (*Id.* ¶¶ 217–21.) Against Monroe Township—included in Counts Eight, Nine, and Twelve in Track A—Plaintiffs ask this Court to "[e]nter relief preventing ongoing retaliation and harassment . . . including supervisory safeguards, training, and early warning systems for officers with high dismissal rates or repeated complaints." (*Id.* ¶ 224.) Plaintiffs also request that this Court enter "narrowly tailored injunctive relief preventing ongoing retaliation and harassment by Monroe Township and its officers," and seek system-wide relief aimed at regulating traffic stops and training for officers with "repeated civilian complaints." (*Id.* ¶ 223.)

As to the State Defendants in Track B, Plaintiffs first seek injunctive relief regarding "statewide data production" and ask this Court to "[o]rder Defendants to produce several categories of data." (*See* FAC at 28–29.) These categories are outlined as 1) pretrial and risk assessment data; 2) speedy trial and case timing data; 3) enforcement and traffic data; 4) complaints and accountability data; and 5) reference data. (*Id.* at 28–29.) Plaintiffs title their remaining requests for injunctive relief as "systemic reforms," asking this Court to essentially re-

20

tool the New Jersey criminal justice system with various "PSA system reforms," "speedy trial compliance," "monitoring reforms," and "prosecutorial accountability." (*Id.* at 30.)

The nature and scope of these requests raise serious questions about Plaintiffs' Article III standing. "Standing is a question of subject matter jurisdiction." *Petroleos Mexicanos Refinancion v. M/T KING, A (Ex–Tbilisi)*, 377 F.3d 329, 324 (3d Cir. 2004). "Article III [of the United States Constitution] confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). To establish Article III standing, a plaintiff must demonstrate "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016). Moreover, a plaintiff's standing with respect to some relief does not automatically confer standing for all relief. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought.").

### 1.    Monroe Township

Plaintiffs lack standing to seek injunctive relief against Monroe Township. In order to have standing to assert forward-looking injunctive relief, plaintiffs "must allege a real and immediate threat of future injury." *Doe v. Div. of Youth & Family Servs.*, 148 F. Supp. 2d 462, 478 (D.N.J. 2001) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)). "Allegations of exposure to illegal conduct in the past alone, without a showing of continuing adverse effects, do not demonstrate a case or controversy entitling a plaintiff to prospective injunctive relief." *Id.* at 479 (internal citations omitted). While Plaintiffs allege that they are currently being subjected to

"ongoing retaliation and harassment from Monroe Township and its officers," the FAC, in a most sketchy, scattershot manner, merely catalogues a history of past harms and incidents as against these Defendants without outlining their risk immediate risk of future harm. (FAC ¶ 223.) Plaintiffs' reference to the two alleged traffic stops in 2025, LeMont's "pretrial restraints" from the Municipal Court, and Plaintiffs' "ongoing residence in Monroe Township" are plainly not enough to indicate "a real and immediate threat of future injury." (ECF No. 35 at 19); *Doe*, 148 F. Supp. 2d at 478. Accordingly, because Plaintiffs seek only injunctive relief against Monroe Township, all claims against Monroe Township are dismissed without prejudice.[15] (*See* FAC ¶¶ 223–24; *id.* ¶¶ 227–28 (only seeking damages from the "individual defendants," not Monroe Township).)

### 2.    State Defendants

The Court likewise lacks jurisdiction to grant Plaintiffs' requested injunctive relief with respect to the State Defendants in Counts Thirteen through Seventeen. As an initial matter, Plaintiff Jessica does not have a cognizable injury-in-fact for standing with respect to any of the claims against the State Defendants for injunctive relief. From what the Court can glean from the FAC's limited, discursive allegations, Jessica was first arrested in Milltown for alleged shoplifting but was released on a summons. (FAC ¶ 128.) A month later, Jessica alleges that she was arrested again for shoplifting in Marlboro but was temporarily jailed as a result. (*Id.* ¶ 129.) The FCA alleges that the PSA system then treated Jessica's pending Milltown charges as a pretrial risk factor, which was used to temporarily detain her until she was released on Level 3 pretrial monitoring. (*Id.* ¶ 130A.) The FAC does not allege the duration of her detention. Jessica alleges that both shoplifting cases

---

[15] Even if Plaintiffs could plead a concrete, non-speculative risk of future injury, their claims for injunctive relief against Monroe Township would likely not be redressable by Court action, given Plaintiffs' expansive reform requests, as discussed below. *See Dayton Bd. of Ed. v. Brinkman*, 433 U.S. 406, 419–20 (1977) ("The power of the federal courts to restructure the operation of local and state governmental entities is not plenary. Once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." (internal quotation marks omitted)).

have been resolved but posits that "[h]er arrest history will be used against her in any future encounter with the criminal justice system." (*Id.* ¶ 133.)

As discussed with reference to Monroe Township, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Aichele,* 757 F.3d at 361 (quoting *Lyons,* 461 U.S. at 102). While Jessica may have previously been subject to pretrial release conditions, her criminal matters, at least up and until the FAC was filed, have been resolved. (FAC ¶ 39.) Barring her future arrest and her subsequent re-entry into the pretrial process, Jessica lacks an Article III injury. That an arrest might theoretically come at the hands of any police officer in the state is purely hypothetical. *Reilly v. Ceridian Corp.,* 664 F.3d 38, 42 (3d Cir. 2011) ("A plaintiff . . . lacks standing if his 'injury' stems from an indefinite risk of future harms inflicted by unknown third parties."). The FAC concedes as much, only stating that Jessica "has standing for *damages* based on concrete *past* injuries." (*Id.* ¶ 43 (emphasis added).) Accordingly, Jessica lacks standing to maintain Plaintiffs' claims for injunctive relief against the State Defendants.

Moreover, LeMont also lacks standing to seek Plaintiffs' requested "Statewide Data Production." (*See id.* at 28–29.) This requested data is an exhaustive laundry list of requests relating to "each criminal case," "each traffic stop," "each citizen complaint against [police] officers," and the demographics of every criminal defendant, officer, and prosecutor in the state. (*Id.*) Plaintiffs effectively ask this Court to order that the State of New Jersey create a repository of digital information to track every conceivable criminal metric Plaintiffs are interested in. (*See id.* (seeking, *inter alia*, demographic information "for each criminal case," including PSA scores, "complaint type, allegations, officer(s) named, investigation status, outcome, and any discipline imposed . . . for each citizen complaint against officers;" "[t]raffic summonses/citations issued for

violations occurring within Monroe Township to sworn Monroe Township Police Department officers (on-duty or off-duty), and the disposition of each such summons/citation;" and a "speedy trial clock for all pending cases showing time elapsed, time excluded, and time remaining under [Criminal Justice Reform Act ("CJRA")] thresholds").) Plaintiffs even specify how that data should be produced, stating that "[d]ata shall be produced in standard formats (CSV, JSON, or equivalent) with documentation of field definitions," and requesting that such data—which may not even exist at all—be produced in 90 days "and updated quarterly thereafter." (*Id.*)

This sort of relief is plainly not redressable by the Court. "The redressability element of standing is not satisfied if the relief the plaintiff seeks is 'impossible' for the court to grant." *Page v. Biden*, No. 20-104, 2021 WL 311002, at *3 (D.D.C. Jan. 29, 2021) (quoting *Newdow v. Roberts*, 603 F.3d 1002, 1010 (D.C. Cir. 2010)). The Court could in no way oversee or administer the exchange of data of this scope, which requests every possible metric the New Jersey criminal justice could produce at every level and in perpetuity. Because the production of this *data* would not even "prevent the claimed injury" LeMont allegedly suffers—an allegedly unconstitutional PSA and pretrial services system and their effects on *LeMont's* constitutional rights—he does not have standing to seek such relief from the State Defendants. *Newdow*, 603 F.3d at 1011. LeMont's "ongoing exposure" to New Jersey criminal procedures will not be remedied by unfettered access to his neighbors' criminal proceedings and traffic stops. (FAC ¶ 42.)

Finally, the Court also lacks jurisdiction to provide Plaintiffs' requested "Systemic Reforms" of the PSA system,[16] New Jersey eCourts, pretrial services, and prosecutors' offices. (*Id.*

---

[16] Although not clear, it appears that the majority of Plaintiffs' requested reforms of the PSA system stem from a fundamental misunderstanding of what are treated as risk factors under the PSA algorithm. Plaintiffs appear to conflate the distinction between prior arrests and dismissed cases (clearly *not* part of the PSA algorithm) and pending charges (which reasonably are). (*See* FAC ¶¶ 133, 138–39, 153.) Plaintiffs broadly allege that the PSA "retains data from prior arrests," "treats pending charges and unadjudicated allegations as risk factors," and "does not wait for convictions." (*See id.* ¶¶ 133, 138.) However, prior arrests and

at 30.) Even assuming, *arguendo*, LeMont possesses standing to challenge the PSA and pretrial services system consistent with the Third Circuit's reasoning in *Holland v. Rosen*, 895 F.3d 272, 286–88 (3d Cir. 2018),[17] the Court lacks jurisdiction to provide such relief. "A federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable." *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974). As the Supreme Court explained in *O'Shea*, the principles of *Younger v. Harris* suggest that federal courts should not undertake "an ongoing federal audit of state criminal proceedings," and that any sort of "'periodic reporting' system" of ongoing "First, Sixth, Eight, Thirteenth, and Fourteenth Amendment[]" violations was "antipathetic to established principles of comity" between state and federal courts. *Id.* at 490, 500–01 (discussing *Younger v. Harris*, 401 U.S. 37 (1971)); *Hagberg v. New Jersey*, No. 16-1189, 2017 WL 4270524, at *10 (D.N.J. Sept. 26, 2017), *aff'd*, 751 F. App'x 281 (3d Cir. 2018) (citing *O'Shea*, 414 U.S. at 500-01) (finding that ordering a state court to conduct plenary hearings within ten days would "require the federal District Court to exert control over the New Jersey family court's day-

___

dismissed cases are explicitly not considered as part of a defendant's PSA score, and the PSA algorithm does in fact "wait" to consider convictions. *See Holland v. Rosen*, 895 F.3d 272, 281 (3d Cir. 2018) (citing American Civil Liberties Union of New Jersey *et al.*, New Jersey Pretrial Justice Manual 7, 8 (2016)) (identifying the nine PSA risk factors as (1) defendant's age at current arrest; (2) current violent offense, or current violent offense by a defendant twenty years old or younger; (3) pending charge(s) at the time of arrest; (4) prior misdemeanor convictions; (5) prior felony convictions or any prior convictions (misdemeanor or felony); (6) prior violent convictions; (7) prior failures to appear in the past two years; (8) prior failures to appear older than two years; and (9) prior sentences leading to incarceration). There is no inclusion of past arrests or dismissed charges in the PSA risk factors. *Id.* Moreover, while Plaintiffs (correctly) allege that the PSA "treats pending charges as risk factors," they fail to allege what, if anything, entitles them to relief, aside from their self-serving beliefs that the same "shall not be treated as criminal history in PSA calculations." (*See* FAC at 30.) It is axiomatic that a pending charge might be relevant in assessing a defendant's risk of flight or danger to the community. No additional discussion on this is warranted.

[17] *Holland*, which discussed a plaintiff's standing to challenge the New Jersey CJRA while actively detained without bail, would not provide LeMont standing to seek injunctive relief *unrelated* to that Act's provisions—among other things, Plaintiffs' requests for an "automated speedy trial clock" in eCourts and extensive reforms of the police complaint process. (FAC at 30.) For the reasons described above, the scale and impossibility of this impracticable relief are plainly not redressable by the Court. *Fasullo v. Jud. Inquiry Bd.*, No. 25-15263, 2026 WL 1329793, at *5 (N.D. Ill. May 13, 2026) ("Standing doesn't exist unless the district court could do something about the problem.").

to-day operations."); *Fam. C.L. Union v. New Jersey*, 386 F. Supp. 3d 411, 442 (D.N.J. 2019) (quoting *O'Shea*, 414 U.S. at 500) ("[F]ederal courts should not enter orders 'aimed at controlling or preventing the occurrence of specific events that might take place in the course of future' state court proceedings.")).

Accordingly, the Court lacks the jurisdiction to provide Plaintiffs' requested injunctive relief against the State Defendants.[18] *See Wilson v. N.J. Div. of Child Prot. & Permanency*, No. 13-3346, 2019 WL 13260178, at *11 (D.N.J. Aug. 23, 2019) (dismissing requested relief consistent with *O'Shea* for lack of jurisdiction).

### 3.    Plaintiffs' Requests for Declaratory Relief

Having concluded that Plaintiffs lack standing for any of their requested injunctive relief against the State Plaintiffs, the Court now turns to Plaintiffs' requests for declaratory relief related to those same claims. Plaintiffs' requests mirror their above-discussed due process challenges: They seek declarations that substantial portions of the pretrial services framework, eCourts, and the CJRA are unconstitutional. (FAC ¶¶ 217–21.) It is thus clear to this Court that "Plaintiff[s] here do[] not truly seek declaratory relief," but rather, "the interference with [LeMont's] criminal proceedings." *Green-Bey v. Atl. Cnty.*, No. 21-20143, 2022 WL 2532665, at *2 (D.N.J. July 7, 2022) *aff'd*, No. 22-2348, 2022 WL 17546302 (3d Cir. Dec. 9, 2022). Such relief "is not permitted under § 1983." *Id.*

To the extent Plaintiffs' requests for declaratory relief can be construed as seeking different relief than that in their requests for injunctive relief, Plaintiffs' requests focus on past harms, not

---

[18] Moreover, Plaintiffs provide no legal basis whatsoever to suggest that their broad requested reforms to the New Jersey criminal system and language of the CJRA are in any way constitutionally required. In fact, the Third Circuit in *Holland*, the only case to assess the constitutionality of the Criminal Justice Reform Act, concluded that certain pretrial release provisions in the Act *did not* violate procedural due process. *Holland*, 895 F.3d at 297–300.

the likelihood of future injury. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (per curiam) ("Declaratory judgment is inappropriate solely to adjudicate past conduct."). Per the FAC, LeMont has already been placed on Level 3 pretrial monitoring and received his risk score from the PSA algorithm—any declaration regarding these frameworks would be inherently backwards looking.[19] *Id.*; (FAC ¶¶ 217-18.)

Most charitably, Plaintiffs' only references to some sort of *future* harm for which declaratory judgment is appropriate are allegations 1) that the eCourts system "depriv[es] defendants of case-age transparency and speedy trial tracking," and 2) that the CJRA fails to provide "enforceable remedies to monitored defendants" by failing to provide opportunities for defendants to periodically review or challenge their pretrial monitoring conditions. (*Id.* ¶¶ 219–20.) Such declarations are also unavailable to Plaintiffs. Plaintiffs' claims of future harm are no more than speculative and fail to "show a likelihood of future injury." *Rutkowitz v. Turner*, No. 17-6622, 2018 WL 3388306, at *5 (D.N.J. July 12, 2018). Plaintiffs allege no future event in which eCourts will deprive them of due process, or some upcoming deadline that will be mismanaged by the absence of a speedy trial clock. *Id.*; *cf. Gurvey v. Grant*, No. 21-16397, 2021 WL 4077584, at *2 (D.N.J. Sept. 8, 2021) (finding that plaintiffs failed to demonstrate imminent injury caused by standard use of eCourts in preliminary injunction context). Further, Plaintiffs' request for declaratory relief regarding the lack of enforceable remedies and review procedures under the CJRA misreads the statute. The CJRA provides criminal defendants the right to request modification of release conditions in certain circumstances. N.J. Ct. R. 3:26-2(c). Plaintiffs do not

---

[19] Similarly, Plaintiffs' separate request—in connection with its claims against the Monroe Defendants discussed below—that this Court "[d]eclare that charging Love while not charging Dragustine violated Equal Protection" is a request in connection with a past event for which a declaratory judgment is inappropriate. (FAC ¶ 222); *Corliss*, 200 F. App'x at 84.

allege that LeMont availed himself of such relief, nor do they explain how a broader right to challenge release conditions is constitutionally required. *See Holland*, 895 F.3d at 297–300 (holding that CJRA pretrial detention process complies with due process). Thus, Plaintiffs' various requests for declaratory relief are denied. Accordingly, because all of Plaintiffs' requested relief from the State Defendants is unavailable to them, Counts Thirteen through Seventeen against the State Defendants must be dismissed.

### B.    PLAINTIFFS' FAILURE TO COMPLY WITH FED. R. CIV. P. 8

Having dismissed all of the claims against the State Defendants and Monroe Township, only Counts One through Twelve against the Police Defendants remain. Before addressing those remaining claims on the merits, a number of Plaintiffs' allegations fail to satisfy Rule 8's pleading requirements at the threshold. Plaintiffs' long and repetitive yet substantively hollow 34-page, 230-paragraph FAC does not comply with the requirements of Rule 8 across the board. (*See* FAC ¶¶ 90–94, 134–35); *see, e.g., Wilcher v. Potter*, No. 08–2723, 2009 WL 235497, at *2 (D.N.J. Jan. 29, 2009) (holding that verbose 139-paragraph amended complaint did not provide "short and plain statement" under Rule 8). Adding to this confusion is the FAC's failure to meaningfully distinguish between Plaintiffs in its allegations and causes of action, often referring to "Plaintiff" without identifying whether that Plaintiff is LeMont or Jessica. (*See, e.g.* FAC ¶ 69); *cf. Darrick Enters. v. Mitsubishi Motors Corp.*, No. 05-4359, 2007 WL 6813810, at *3 (D.N.J. Jan. 19, 2007) (requiring a more definitive statement where complaint failed to distinguish between plaintiffs). These deficiencies alone justify the complete dismissal of the FAC.

Even construing the FAC liberally in light of Plaintiffs *pro se* status, Plaintiffs' group pleading of certain Police Defendants without alleging individualized conduct is fatal for a number of those Defendants. The FAC contains no individualized allegations whatsoever against Sergeant Taylor and Officers Meagher, Lloyd, Buchanan, and Ramnaidu. (*See* FAC ¶¶ 23, 88.) Instead, the

28

FAC bundles all five Defendants' alleged conduct—namely, that they "participated in the June 21, 2024 arrest"—into a single generalized allegation. (*Id.*) The FAC is similarly deficient in its allegations as against Sergeant Paglio and Officer Bell, who are alleged to have collectively "participated in effectuating the December 26, 2023 false arrest and processing," leaving their respective roles in the conduct and individualized liability unspecified. (*See id.* ¶¶ 13, 54.) Such ambiguities fail to give Defendants "fair notice" of the claims pleaded against them and constitutes impermissible group pleading. *See Twombly*, 550 U.S. at 555; *see also Galicki*, 2015 WL 3970297, at *2 (citations omitted) (holding that "conclusory allegations against [d]efendants as a group" are insufficient to survive a motion to dismiss); *Karupaiyan v. Shalimar Grp. Of Rests.*, 2023 WL 2367631, at *1 (D.N.J. Mar. 6, 2023) ("Vague group pleadings do not meet the requirements of Rule 8."). Accordingly, the Court will dismiss without prejudice Plaintiffs' claims against Police Defendants Paglio, Taylor, Bell, Meagher, Lloyd, Buchanan, and Ramnaidu.

### C.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE REMAINING POLICE DEFENDANTS UNDER FED. R. CIV. P. 12(B)(6)

After the above dismissals of individual officers, Plaintiffs' first eleven Section 1983 Counts remain against fourteen of the Police Defendants: Griffin Banos, Ronald Brewer, Leung, Sylvestri, Spence, Burns, Cohn, Caruso, Holtz, Pankeri, Pronin, Mosakowski, Rieker, and Ostner. To state a claim for relief under Section 1983, a plaintiff must "allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law." *Tormasi v. Lanigan*, 363 F. Supp. 3d 525, 534 (D.N.J. 2019). The Court takes each of Plaintiffs' remaining claims in turn.

### 1.   Counts One & Two: False Arrest

Counts One and Two of the FAC both state claims for false arrest under Section 1983. Count One is brought in connection with LeMont's December 23, 2023 arrest against Defendants

Holtz, Mosakowski, Spence, Rieker, and Ostner. (FAC ¶¶ 161–64.) Count Two is brought in connection with LeMont's June 21, 2024 arrest against Defendants Pankeri, Brewer, Leung, Cohn, Caruso, Spence, and Pronin. (FAC ¶¶ 165–68.)

"To state a plausible claim for false arrest under the Fourth Amendment, a plaintiff must plead sufficient facts to support a reasonable inference that the defendants acted without probable cause and are not entitled to qualified immunity." *Bouie v. Fingal*, No. 25-13695, 2025 WL 2938272, at *2 (D.N.J. Oct. 16, 2025) (cleaned up) (quoting *Spiker v. Whittaker*, 553 F. App'x 275, 278 (3d Cir. 2014)). "An officer has probable cause to arrest a person when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Harvard v. Cesnalis*, 973 F.3d 190, 199–200 (3d Cir. 2020) (citation omitted). "The probable cause inquiry is not 'whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense.'" *Bouie*, 2025 WL 2938272, at *2 (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)).

Plaintiffs fail to state a claim for false arrest regarding LeMont's December 26, 2023 arrest in Count One. Quite simply, the dearth of factual allegations in the FAC relating to the December altercation is woefully deficient to set forth an adequate claim of false arrest. (*See* FAC ¶¶ 9–15, 50–57, 161–64.) The FAC states that the Police Defendants involved in this arrest were responding to a physical altercation between LeMont and another individual.[20] (*Id.* ¶¶ 50–57.) Responding to

---

[20] Although difficult to discern in the litany of kitchen-sink allegations in the FAC, to the extent Plaintiffs rely on the traffic stops and citations on December 26, 2023 to support their claims for false arrest, those allegations cannot support their claim for false arrest alone. (*See* FAC 13, 54); *Crock v. Pennsylvania*, 397 F. App'x 747, 750 (3d Cir. 2010) (finding traffic stop and citation, without more, could not support false arrest claim).

30

that altercation alone may provide probable cause for Defendant Holtz, who was not required to "conduct[] any investigation" or discuss the incident with Plaintiff. (*Id.* ¶ 51); *See District of Columbia v. Wesby*, 583 U.S. 48, 67 (2018) (explaining that "officers are not required to take a suspect's innocent explanation at face value"); *see also Anderson v. Goga*, No. 11–528, 2013 WL 3242445, at *3 (W.D. Pa. June 25, 2013) (noting that an officer failing to interview a plaintiff "and elicit his version of events" was "neither uncommon, nor a barrier to probable cause"). Plaintiffs further fail to state a claim for supervisory liability as against Sergeants Mosakowski and Spence. Plaintiffs' allegation that the Sergeants "provided supervisory approval for the arrest and charging decision without investigating Plaintiff's account" is entirely conclusory and unsupported by any facts showing their personal involvement in the December 26, 2023 arrest. *See Habayeb v. Butler*, No. 15–5107, 2016 WL 1242763, at *4 (D.N.J. Mar. 29, 2016) ("Plaintiff's bare allegations that . . . [the chief of police] tacitly approved the behavior and actions of the arresting . . . officers is insufficient to state a Section 1983 claim for supervisory liability.")

Plaintiffs' allegation to the contrary that a Superior Court found no probable cause does not change the Court's conclusion. As Plaintiffs themselves allege, LeMont faced continued prosecution in Municipal Court after the Superior Court concluded that probable cause did not exist for his simple assault, criminal mischief, and harassment charges. (FAC ¶¶ 59–60.) This continued prosecution following the Superior Court's probable cause hearing supports the conclusion that probable cause existed for the December 26, 2023 arrest. *See Lind v. Schmid*, 337 A.2d 365, 369 (N.J. 1975) (finding that conviction in municipal court generally raises rebuttable

presumption that probable cause existed at arrest). Accordingly, Count One is dismissed without prejudice.

Plaintiffs similarly fail to state a claim for false arrest with respect to LeMont's June 21, 2024 arrest in Count Two. The FAC contains no allegations that that would suggest that the officers lacked probable cause to arrest LeMont. LeMont's alleged statement at the police station—"I don't want to break his neck . . . I don't want to hurt him . . . I just want to be left alone"—plausibly suggests a thinly veiled threat that would justify a terroristic threats charge. (FAC ¶ 74.) Moreover, unlike in Count One, and although not dispositive, Plaintiffs do not point to a favorable probable cause determination or decision of any kind from a New Jersey state court. In fact, like much of Plaintiffs' FAC, what is missing in contrast to what is alleged is far more prevalent. On this, Plaintiffs have even failed to set forth the outcome of the June 2024 arrest, favorable or otherwise, or whether it remains pending. Plaintiffs' self-serving and conclusory allegations that LeMont's "statement forming the basis of the charges was not a threat" is insufficient to state a claim for relief. (*Id.* ¶ 166); *Johnson v. Camden Metro Police*, No. 20–9935, 2021 WL 5578710, at *2 (D.N.J. Nov. 30, 2021) (noting that a plaintiff's "bald assertion that he committed no crime" was insufficient to state a claim for false arrest). Likewise, Plaintiffs' conclusory allegations that Defendants Leung, Caruso, and Spence "reviewed and approved the terroristic-threat charging decision despite the absence of probable cause" are insufficient to impose supervisory liability upon these officers. (FAC ¶ 166); *see Habayeb*, 2016 WL 1242763, at *4. As such, the Court dismisses Count Two without prejudice.

### 2.    Count Three: Fourth Amendment Unlawful Seizure

Plaintiffs plead a series of traffic stops conducted by various Police Defendants that they assert constitutes a violation of their Fourth Amendment rights. The FAC references three traffic stops: 1) LeMont's December 26, 2023 traffic stops by Defendants Holtz, Rieker, and Ostner (as

stated, the FAC is unclear whether Plaintiffs were stopped once, twice, or three times in December 2023); 2) LeMont's June 20, 2024 traffic stop initiated by Defendant Pankeri "for obstruction of view;" and 3) Jessica's "pretextual" May 19, 2025 traffic stop initiated by Defendant Cohn that Plaintiffs allege constituted "witness intimidation." (*See* FAC ¶¶ 27, 55–57, 72, 103–13.)

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "Traffic stops—however brief—are seizures, so the Fourth Amendment requires they be reasonable under the circumstances." *United States v. Ross*, 151 F.4th 487, 494 (3d Cir. 2025) (cleaned up) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)). "A traffic stop is reasonable at its inception when an officer has reasonable suspicion to believe that the motorist committed a traffic violation." *Ross*, 151 F.4th at 494 (citing *United States v. Delfin-Colina*, 464 F.3d 392, 396–97 (3d Cir. 2006)). During a traffic stop, "the tolerable duration of police inquiries . . . is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). For this reason, "a lawful traffic stop that was justified at the outset only by a traffic violation transforms into an unconstitutional seizure 'if it is prolonged beyond the time reasonably required to complete' that dual mission." *Ross*, 151 F.4th at 494 (quoting *Rodriguez*, 575 U.S. at 350–51).

Plaintiffs' sparse and confusing details about the Holtz, Rieker, Ostner, and Pankeri traffic stops are insufficient to state claims for unlawful seizure, and frankly, are near impossible to follow. Plaintiffs' FAC provides a deficient and confusing timeline of stops, with a complete failure to provide dates and times for many of the alleged stops, as well as wholly conclusory factual allegations for all. For example, paragraph 28 of the FAC alleges "eleven traffic citations" total between 2023 and 2025. (FAC ¶ 28.) The prior paragraph appears to reference either ten or twelve

33

stops—hard to know. (*Id.* ¶ 27.) Each of Officer Pankeri's stops over a two-year period fail to provide any dates or material information except that five of the six appear to have been dismissed because of a technical "defect" in their issue. (*Id.* ¶ 27.) As to Officer Pankeri's June 20, 2024 "obstruction of view" citation, Plaintiff (which Plaintiff, we do not know) did not set forth an outcome. (*Id.* ¶ 72.) Lastly, as stated, Plaintiffs also allege that Officers Rieker, Ostner, and Holtz conducted traffic stops involving LeMont on December 26, 2023 (again, precisely how many stops is unstated by Plaintiffs), the same day that Officer Holtz arrested LeMont for a separate incident related to an altercation. (*Id.* ¶¶ 27, 55–57.) The jumbled, "throw it against the wall" allegations for these traffic stops make it impossible for the Court to determine if these Defendants were objectively unreasonable in their decision to pull LeMont over, and Plaintiffs' conclusory allegation that the "stops were extended beyond the traffic mission without reasonable suspicion" does not prevent dismissal. (*Id.* ¶ 170); *Iqbal*, 556 U.S. at 678; *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *3 (D.N.J. July 29, 2016) (bare allegation that officer unlawfully stopped plaintiff insufficient to state unlawful seizure claim). Plaintiffs' reliance on the eventual dismissal of the citations or the self-serving, conclusory characterization that they were pretextual also cannot support their claim that the stops were unlawful. *United States v. Sam*, No. 24-169, 2025 WL 2808920, at *3 (M.D. Pa. Sept. 30, 2025) (explaining that officer being "ultimately mistaken over whether a traffic violation occurred" does not render stop unlawful); *United States v. Leal*, 235 F. App'x 937, 939 (3d Cir. 2007) (holding that officer's "subjective motivation for initiating the traffic stop is irrelevant").

Plaintiffs' claim against Defendant Cohn for stopping Jessica must be dismissed for similar reasons. Plaintiffs assert that this stop was unreasonable because (1) Jessica was wearing her seatbelt, so the seatbelt-related ticket she received was "fabricated," (2) Defendant Cohn

pretextually stopped the car because of his relationship to LeMont's terroristic threats case, and (3) the 25-minute duration of the stop went "beyond the scope of the traffic mission" because Defendant Cohn ran LeMont's identification "despite having no reason to do so." (FAC ¶¶ 18, 111–12.) Plaintiffs' FAC fails to set forth the outcome of the traffic citation.

Plaintiffs' contention that Cohn was incorrect about the traffic violation, or that the stop began with pretextual purpose, are insufficient to support a claim for unlawful seizure. *Sam*, 2025 WL 2808920, at *3; *Leal*, 235 F. App'x at 939. Defendant Cohn's decision to run LeMont's identification—as an additional occupant in the vehicle—does not render the stop unlawful, as officers are permitted under the Fourth Amendment to run records, license, and warrant checks on all occupants of a vehicle in a traffic stop. *United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003); *see also* 4 W. LaFave, Search and Seizure § 9.3(c), (6th ed. 2025); *cf. Rodriguez*, 575 U.S. at 358 (concluding that dog sniff as part of traffic stop exceeded reasonable scope of traffic stop). Accordingly, Count Three is dismissed without prejudice.

### 3.    Count Four: Fourth Amendment Continued Seizure

Count Four of the FAC brings a claim for "Fourth Amendment continued seizure" against three "Pretrial Services Officers John Doe" Defendants for placing LeMont "on Level 3 monitoring for 22+ months" despite the Superior Court's probable cause finding. (FAC ¶¶ 172–73.) To the extent Plaintiffs are attempting to "attack [LeMont's] pretrial detention" through a Section 1983 claim, this is improper—state criminal defendants may "use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement." *Williams v. Williams*, 22-444, 2022 WL 4280521, at *4 (W.D. Pa. Aug. 22, 2022) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005)); *see also Brown v. United States*, No. 23-605, 2023 WL 6541406, at *1 (D.N.J. Oct. 6, 2023) ("Federal courts have interpreted 'custody' for habeas purposes broadly and have found a petitioner to be in 'custody' where he is 'subject both to "significant restraints

35

on liberty . . . which are not shared by the public generally," along with 'some type of continuing governmental supervision.'" (citing *Obado v. New Jersey*, 328 F.3d 716, 717 (3d Cir. 2003))). In the event Plaintiffs assert a false imprisonment or malicious prosecution claim under the Fourth Amendment, each of those Section 1983 actions require that the underlying criminal case to have terminated in the plaintiff's favor. *See Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir. 2014)); *Krotzer v. Freeman*, No. 12-945, 2012 WL 4513719, at *4 (M.D. Pa. Sept. 5, 2012), *report and recommendation adopted*, 2012 WL 4511418 (M.D. Pa. Oct. 1, 2012). This requirement is not met here because LeMont alleges that his criminal case "remains pending after 22+ months." (FAC ¶ 6.) Accordingly, Count Four must also be dismissed without prejudice.

### 4.    Counts Five & Nine: First Amendment Retaliation

Plaintiffs bring two First Amendment retaliation claims pursuant to Section 1983, both of which relate to the filing of LeMont's June 20, 2024 internal affairs complaints against Officer Pankeri. Count Five asserts that Police Defendants Pankeri, Brewer, Leung, Cohn, Caruso, and Spence retaliated against LeMont for submitting his complaint by filing terroristic threat charges against him. (FAC ¶¶ 174–77.) Count Nine alleges that Police Defendants Sylvestri "placed [LeMont's] complaints on indefinite hold" because of the charges against him, with Defendant Banos sanctioning this practice as police chief. (*Id.* ¶¶ 187–90.)

To plead a First Amendment retaliation claim, Plaintiff must allege that (1) he "engaged in conduct protected by a right in the Constitution," (2) Defendants "engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising [his] constitutional rights," and (3) a "causal link existed between the protected activity and the retaliatory action." *Falcone v. Dickstein*, 92 F.4th 193, 205 (3d Cir. 2024)) (internal quotation marks omitted). Regarding the causation prong, the Third Circuit has cautioned that "[a] court must be diligent in enforcing these

36

causation requirements." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

"[F]or protected conduct to be a substantial or motiving factor in a decision, the decisionmaker[] must be aware of the protected conduct." *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *DeFlaminis*, 480 F.3d at 267. A plaintiff cannot solely "show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). Stated differently, the motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399 (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). As such, temporal proximity alone is not enough to establish causation unless it is unusually suggestive of retaliation. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997). Finally, allegations of inaction are not sufficient to establish an actionable claim for retaliation. *See Kaucher v. County of Bucks*, 455 F.3d 418, 433 n.11 (3d Cir. 2006) ("[F]ailures to act cannot form the basis of a valid § 1983 claim.").

As with all claims under Section 1983, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (citations omitted). "When there is more than one defendant, the [plaintiff] must show that

each defendant individually participated or acquiesced in each of the alleged constitutional violations." *Smith v. Cent. Dauphin Sch. Dist.*, 355 F. App'x 658, 667 (3d Cir. 2009).

Even if LeMont's submission of internal affairs complaints constitutes protected First Amendment activity, Count Five must still be dismissed. *Calabrese v. Tierney*, No. 19-12526, 2020 WL 1485944, at *10 (D.N.J. Mar. 27, 2020) ("Plaintiff's internal affairs complaint constitutes protected 'speech.'"). First, as is the case with most of the other claims in the FAC, Plaintiffs fail to allege with particularity how the panoply of Defendants named in this Count "individually participated or acquiesced in each of the alleged constitutional violations." *Smith*, 736 F.2d at 910. Plaintiffs merely assert, in group pleading, that all of the six officers named "filed terroristic threat charges against [LeMont]" in retaliation to his complaints. (FAC ¶¶ 175–76.) Such conclusory group pleading requires dismissal of this claim. *See Karupaiyan*, 2023 WL 2367631, at *1. Moreover, as discussed with respect to Plaintiffs' false arrest claim following this incident, the fact that the arresting officers appear to have had probable cause to arrest LeMont for his threatening statements "doom[s] Plaintiffs' retaliatory arrest claim." *Falcone*, 92 F.4th at 211. LeMont's self-serving, conclusory statements that his June 21, 2024 arrest was done in "retaliation" for making his complaint fail to thread the needle from conclusory to cognizable. Even with Plaintiffs' bare assertions of motive, Plaintiffs fail to show that continued prosecution of LeMont's terroristic threats claim is objectively unreasonable and without probable cause to allow the Court to infer causation. (FAC ¶¶ 59–61 (alleging prosecution of terroristic threats charges still ongoing); *Nieves*, 587 U.S. at 400–01; *see also Kachmar*, 109 F.3d at 178 (temporal proximity alone is insufficient

38

to establish causation).[21] Plaintiffs' FAC provides insufficient allegations to allow Count Five to proceed.

Count Nine must also be dismissed. Plaintiffs allege that Defendant Sylvestri placed the internal affairs complaints on "indefinite hold" and "used [internal affairs] as a tool to suppress protected petitioning activity and to shield officers from accountability." (*See* FAC ¶¶ 26, 189.) Plaintiffs add that "[t]his practice was maintained and tolerated by . . . Chief Banos through deliberate inaction and ratification." (*Id.* ¶ 189.) However, "a failure to act on a complaint is not a retaliatory or adverse action sufficient to sustain a First Amendment retaliation claim." *Hensley v. Bucks Cnty. Corr. Facility*, No. 15-6098, 2016 WL 4247637, at *7 (E.D. Pa. Aug. 11, 2016) (cleaned up) (collecting cases). Plaintiffs' allegations that Defendant Sylvestri did not investigate LeMont's complaints within an acceptable time or in a preferred manner are insufficient to raise a retaliation claim. *Cf. Kaucher*, 455 F.3d at 433 n.11 (finding that allegations of inaction are not sufficient to establish a Section 1983 claim). Further, given that Defendant Sylvestri did not enact an unconstitutional policy, Defendant Banos cannot be liable for "maintaining" one. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015) (supervisor may only be

---

[21] Plaintiffs also may not rely on the Supreme Court's exception in *Nieves*: "A plaintiff need not establish the absence of probable cause 'where officers have probable cause to make arrests, but typically exercise their discretion not to do so.'" *Falcone*, 92 F.4th at 211 (quoting *Nieves*, 587 U.S. at 406). Plaintiffs' exclusive "objective fact" to indicate that police "typically exercise their discretion" is their allegation that another person at the police station on June 20, 2024 was also yelling obscenities and threatening officers, but was not charged with making terroristic threats. (FAC ¶¶ 78–80.) As Plaintiffs themselves allege, LeMont was also not charged that same day. (*Id.* ¶ 87.) Furthermore, Plaintiffs' reliance on this single incident does not support the contention that "police *commonly* see [this type of violation] . . . and fail to make arrests." *Falcone*, 92 F.4th at 212 (emphasis added).

liable if that person establishes a policy that is unconstitutional and that injures the plaintiff). Accordingly, Count Nine is dismissed without prejudice.

### 5.    Count Six: First Amendment Right to Record

In Count Six, Plaintiffs allege that, in connection with the June 20, 2024 traffic stop, Defendant Burns violated LeMont's First Amendment right to record. (FAC ¶¶ 21, 179.) Plaintiffs allege that when LeMont began to film the encounter, Defendant Burns "physically stepped in front of Plaintiff's camera, placed his body between the camera and the police vehicles, and ordered Plaintiff to stop filming, stating Plaintiff could not film inside the police cars." (*Id.* ¶ 96.)

The Third Circuit has interpreted the First Amendment's right of access to information as also granting the public the "right to record—photograph, film, or audio record—police officers conducting official police activity in public areas." *Fields v. City of Philadelphia*, 862 F.3d 353, 360 (3d Cir. 2017). This right, however, "is not absolute." *Id.* "It is subject to reasonable time, place, and manner restrictions." *Id.* (citations omitted). The *Fields* court also recognized that there may be other countervailing concerns that might render an individual's right to record police activity unprotected. *See id.* If a person's recording interferes with police activity, that activity might not be protected. *Id.*

Given the FAC's limited allegations, Defendant Burns' conduct did not undermine LeMont's First Amendment rights. Plaintiffs do not allege that Burns prevented LeMont from filming the encounter as a general matter, only (1) that he "ordered Plaintiff to stop filming," and (2) "placed his body between the camera and the police vehicles" so that "Plaintiff could not film inside the police cars." (FAC ¶ 96.) As courts have consistently held, a police officer asking a citizen to stop recording—without more—does not violate that citizen's First Amendment rights. *See, e.g.*, *Taylor v. El Centro College*, No. 21-999, 2022 WL 102611, at *10 (N.D. Tex. Jan 10, 2022); *Pierner-Lytge v. Hobbs*, 601 F. Supp. 3d 404, 412 (E.D. Wisc. 2022); *cf. Fields*, 862 F.3d

40

at 356 (officer prevented plaintiff from filming by "abruptly push[ing her] and pinn[ing] her against a pillar for one to three minutes"). Further, as best as the Court can tell from the FAC's vague allegations, Burns only physically blocked LeMont's camera from recording "inside" of a police vehicle, but did not prevent him from recording. (FAC ¶ 96.) Plaintiffs, to the extent LeMont was trying to record his encounter with police officers, in no way allege that he was unable to do so. Further, Plaintiffs do not specify whether this means Burns obfuscated LeMont's view (1) from the inside of the police car *from the public street* or (2) *from the inside* of the police car. This difference could change the Court's constitutional analysis. *Williams v. Bosley*, No. 18-13092, 2023 WL 3727480, at *7 (D.N.J. May 30, 2023) (suggesting that *Fields* cannot be read so expansively to permit a plaintiff to record police activity "from a position where a plaintiff does not have a legal right to be present."). Regardless, in either case, this sort of limitation is precisely the kind of reasonable "time, place, and manner" restriction on the multitude of potentially sensitive investigative information within a police vehicle, which, unlike a street, is not a public place. *Fields*, 862 F.3d at 360; *cf. Williams*, 2023 WL 3727480, at *7. Count Six must also be dismissed without prejudice.

### 6.    **Count Seven: Selective Enforcement**

Plaintiffs allege that Defendants Pankeri, Brewer, Leung, Cohn, and Pronin "selectively enforced the law against [LeMont] based on his race while declining to enforce against a similarly situated white individual engaged in more serious conduct." (FAC ¶ 183.) Plaintiffs point to the incident at the Monroe Township Police Department where officers allegedly declined to charge George Dragustine (a white male) with terroristic threats, but later arrested LeMont for terroristic

41

threats. (*See id.* ¶ 182.) Plaintiffs allege that,[22] as a Black man, LeMont was treated differently than non-party Dragustine, "a similarly situated white individual." (*Id.*)

A plaintiff seeking to establish a selective enforcement claim must demonstrate "(1) that he was treated differently from other similarly situated individuals; and (2) that this selective treatment was based on an unjustifiable standard, such as race, religion, some other arbitrary factor or to prevent the exercise of a fundamental right." *Karns v. Shanahan*, 879 F.3d 504, 520–21 (3d Cir. 2018) (citations omitted). "Persons are similarly situated . . . when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). In other words, they must have "dealt with the same supervisor, been subject to the same standards, and engaged in the same conduct." *Hatch v. Franklin Cnty.*, 755 F. App'x 194, 199 (3d Cir. 2018) (cleaned up) (quoting *In re Tribune Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018)). To maintain a selective enforcement claim, a plaintiff must demonstrate "evidence of discriminatory purpose, not mere unequal treatment or adverse effect." *Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012).

Plaintiffs fail to state a claim for selective enforcement. Plaintiffs' threadbare retelling of the incident that the relevant Police Defendants selectively enforced the laws against LeMont because of his race amount to no more than legal conclusions insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678. The entirety of the allegations relating to Dragustine alleged threats consist of less than one sentence. (FAC ¶ 79.) More materially, Plaintiffs also fail to allege that Dragustine was a similarly situated individual that was alike to him "in all relevant aspects." *See*

---

[22] As alleged, the basis for Plaintiffs' selective enforcement claim is the June 20, 2024 incident involving LeMont at the Monroe Township Police Department, when he was filling out his internal affairs complaint against Defendant Pankeri. (FAC ¶ 183.) While the FAC includes Jessica in these allegations as a Hispanic individual who was "treated differently," the FAC fails to allege that she was involved in this incident at all. (*Id.* ¶¶ 181–83.) Accordingly, the Court evaluates this claim with respect to Plaintiff LeMont only.

42

*Karns*, 879 F.3d at 520–21; *Startzell*, 533 F.3d at 203. Indeed, the FAC is devoid of any facts with which this Court can assess this factor, such as, among others, whether LeMont and Dragustine had similar criminal histories, the same pattern of police interactions, whether Dragustine was under the influence of an intoxicant, whether Dragustine was known to suffer from symptoms of severe mental illness, or any other facts suggesting they are similarly situated beyond both being present at the police department at the same time and both engaging in heated exchanges with officers. *See United States v. McIver*, 809 F. Supp. 3d 221, 251 (D.N.J. 2025) ("Individuals are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." (cleaned up) (quoting *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996))).

Further, while it is clear to this Court that LeMont disagrees that his conduct amounted to terroristic threats, "[t]he mere fact that one person is prosecuted for a crime while another is not does not support a claim of selective prosecution."[23] *United States v. Weeks*, No. 19-877, 2026 WL 303337, at *8 (D.N.J. Feb. 4, 2026), *reconsideration denied,* No. 19-877, 2026 WL 295748 (D.N.J. Feb. 4, 2026) (quotation omitted); *see also Jewish Home of E. Pa.*, 693 F.3d at 363 (mere unequal treatment is not enough to prove a discriminatory purpose). Accordingly, Count Seven is dismissed without prejudice.

### 7.    Count Eight: *Monell* Liability

Having previously dismissed Monroe Township on standing grounds, Plaintiffs' *Monell* claim remains only against Defendant Banos. (*See* FAC ¶¶ 25, 184–86.) Defendant Banos is the

---

[23] *United States v. Whitfield*, 649 F. App'x 192, 196 n.11 (3d Cir. 2016) (noting that "the prima facie elements for both selective prosecution and selective enforcement are the same: discriminatory effect and discriminatory intent.").

Chief of the Monroe Township Police Department. (*Id.* ¶ 25.) However, because Defendant Banos is not a municipality, "he is an improper *Monell* defendant," and the *Monell* claim against him must be dismissed. *Mervilus v. Union County*, 73 F.4th 185, 197 n.5 (3d Cir. 2023). Accordingly, Count Eight is dismissed without prejudice.

### 8.      Count Ten: 1983 Conspiracy

Plaintiffs assert a conspiracy claim against Defendants Pankeri, Brewer, Leung, Cohn, Caruso, Spence, and Pronin pursuant to Section 1983. (FAC ¶¶ 191–93.) Plaintiffs allege that these Defendants "reached an agreement among themselves to deprive Plaintiff," presumably LeMont, "of his constitutional rights, including his Fourth Amendment right to be free from arrest without probable cause and his First Amendment right to petition the government without retaliation." (*Id.* ¶ 192.) This alleged "conspiracy" relates to the various Defendants' involvement in charging LeMont for terroristic threats. (*Id.* ¶ 193.)

Because the Court dismissed all other federal claims, it must also dismiss Plaintiffs' Section 1983 conspiracy claim. To demonstrate the existence of a conspiracy under Section 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Laurensau v. Romarowics*, 528 F. App'x 136, 140 (3d Cir. 2013) (citations omitted). A civil rights conspiracy also requires "a predicate federal violation" to "anchor" the claim. *Dondero v. Lower Milford Twp.*, 431 F. Supp. 3d 590, 606 (E.D. Pa. 2019), *aff'd*, 5 F.4th 355 (3d Cir. 2021); *see also Rink v. Ne. Educ. Intermediate Unit* 19, 717 F. App'x 126, 141 (3d Cir. 2017) ("There can be no civil conspiracy to commit an unlawful act under § 1983 where the plaintiff has not proven a deprivation of a constitutional or federal statutory right or privilege."). With all of Plaintiffs' federal violations dismissed, there can be no "anchor" to support

44

the alleged conspiracy against LeMont. *Dondero*, 431 F. Supp. 3d at 606. Accordingly, Count Ten is dismissed without prejudice.

### 9.    Count Eleven: 1985 Conspiracy

In their final federal allegation against the Police Defendants, Plaintiffs assert another conspiracy claim, this time pursuant to Section 1985(3). (FAC ¶¶ 195–98.) Plaintiffs allege that "Defendants conspired to deprive Plaintiff [LeMont] of equal protection of the laws and equal privileges and immunities under the laws," and assert that the conspiracy was "motivated by racial animus" because Defendants arrested LeMont and not Dragustine. (FAC ¶¶ 195-96.)

"To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) "Despite its application to private conspiracies, § 1985(3) was not intended to provide a federal remedy for 'all tortious, conspiratorial interferences with the rights of others,' or to be a 'general federal tort law.'" *Owens v. Armstrong*, 171 F. Supp. 3d 316, 336 (D.N.J. 2016) (quoting *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006)). Rather, "a plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber*, 440 F.3d at 135.

Plaintiffs' conclusory assertion that the decision to charge LeMont and not Dragustine indicated a civil rights conspiracy is plainly insufficient. The FAC contains no allegations of any meeting of the minds between the listed Defendants to satisfy the first element of the claim: a conspiracy. *Finch v. Buechel*, 188 F. App'x 139, 141 (3d Cir. 2006) (requiring allegations "from which we can infer an understanding among defendants . . . to deprive [plaintiff] of her

45

constitutional rights on account of her race" to state a Section 1985 claim). Moreover, Plaintiffs' singular contention that the decision to arrest LeMont was discriminatory because Defendants declined to arrest Dragustine is plainly insufficient to plead discriminatory animus under Section 1985(3). Accordingly, Count Eleven, as with all other federal claims alleged against the Police Defendants, is dismissed without prejudice.[24]

### D.   NJCRA CLAIM AND SUPPLEMENTAL JURISDICTION

Finally, the Court addresses Plaintiffs' sole remaining state law claim brought pursuant to the NJCRA. (FAC ¶ 199.) The Court has supplemental jurisdiction over Count Twelve under 28 U.S.C. § 1367. *See Wisc. Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998). However, "where the claim[s] over which the district court has original jurisdiction [are] dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing

---

[24] The Police Defendants also assert that they have qualified immunity. (*See generally* ECF No. 34-4.) Ordinarily, a Court must still consider claims to qualified immunity, even if that Court dismisses the claims on the merits. *See Roth v. City of Hermitage*, 709 F. App'x 733, 736 (3d Cir. 2017) ("Failing to consider the qualified immunity defense before dismissing without prejudice on the merits was error because the District Court failed to resolve a motion asserting qualified immunity . . . at the earliest possible stage in the litigation." (citation omitted)).

Here, the Court cannot discern from the FAC whether (1) the Police Defendants' conduct did not violate a constitutional right or (2) if that right was clearly established. As explained above, the FAC fails to provide sufficient facts and circumstances surrounding the Police Defendants' conduct, particularly for those Police Defendants dismissed on Rule 8 grounds. The FAC does not adequately allege the factual circumstances to give Defendants fair notice, let alone permit the Court to assess whether the Police Defendants' actions were reasonable. Accordingly, the Court denies Defendants' Motion on qualified immunity grounds at this juncture. *See Janowski v. City of North Wildwood*, 259 F. Supp. 3d 113, 126 (D.N.J. 2017) (declining to find qualified immunity evident on the face of the complaint because "[w]ithout further factual development, the Court cannot evaluate the full set of circumstances with which [the officer] was confronted at the time he arrested Plaintiff"); *Debrew v. Auman*, 354 F. App'x 639, 642 (3d Cir. 2009) (vacating order granting motion to dismiss on qualified immunity grounds because the sparse complaint "failed to disclose whether the defendants' actions did not violate a clearly established constitutional right" and therefore "dismissal on qualified immunity grounds was premature." (citing *Thomas*, 463 F.3d at 291)).

so." *Mattis v. Pa. Dep't of Corr.*, No. 19-3672, 2022 WL 610793 (3d Cir. Mar. 2, 2022) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

Here, the Court finds no prudent reason to exercise supplemental jurisdiction over Plaintiffs' NJCRA claim. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction. . . ."). Since this matter was removed to federal court by the State Defendants, the Court remands this case back to the Law Division of the New Jersey Superior Court in Mercer County. *See Harris v. Wetzel*, 822 F. App'x 128, 131 (3d Cir. 2020) (citing *Borough of W. Mifflin*, 45 F.3d at 788) ("If the District Court declines to exercise its supplemental jurisdiction, it should remand the case[] to state court."); *Redo v. New Jersey*, No. 23-21424, 2024 WL 939721, at *4 (D.N.J. Mar. 4, 2024) (remanding removed case after dismissing on combination of Rule 8 and Rule 12 grounds); *Speedwell, LLC v. Town of Morristown*, No. 21-18796, 2023 WL 2207588, at *18 (D.N.J. Feb. 24, 2023) (same).

## CONCLUSION

For the reasons set forth above, the State Defendants' Motion to Dismiss is **GRANTED** and the Monroe Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. The case will be remanded. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: July 1, 2026